IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MyCard, Inc. d/b/a Knot, <br><br>     *Plaintiff*, <br><br> v. <br><br> Atomic FI, Inc., <br><br>     *Defendant*. | Civil Action No. 1:26-cv-00290-CFC |

**PLAINTIFF MYCARD, INC. D/B/A KNOT'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

OF COUNSEL:

Justin K. Victor
Jacob R. Dean
Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road NE
Suite 2500
Atlanta, GA 30305
678.553.2100
victorj@gtlaw.com
deanj@gtlaw.com

Gregory S. Bombard
Greenberg Traurig, LLP
One International Place
Suite 2000
Boston, MA 02110
617.310.6000
Gregory.Bombard@gtlaw.com

Greenberg Traurig, LLP
Benjamin J. Schladweiler (#4601)
Greenberg Traurig, LLP
222 Delaware Avenue, Ste. 1600
Wilmington, DE 19801
302.661.7000
schladweilerb@gtlaw.com

*Attorneys for Plaintiff MyCard, Inc.
d/b/a/ Knot*

Justin A. MacLean
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY  10017
212.801.9200
Justin.MacLean@gtlaw.com

**TABLE OF CONTENTS**

I. ATOMIC ADMITS IT COPIED AND USED KNOT'S CODE ....................1

II. ATOMIC'S DEFLECTIONS ABOUT SUPPOSED PUBLIC AVAILABILITY ARE FACTUALLY WRONG AND TELLING ...............2

   A. The AISC Is Not Publicly Available ................................................................2

   B. Knot's Description Of The AISC Provides Ample Notice .............................5

   C. Knot Deploys Extraordinary Measures To Keep The AISC Confidential......6

III. ATOMIC MISAPPROPRIATED KNOT'S AISC...........................................6

IV. KNOT WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF .......................................................................................................9

V. THE BALANCE OF EQUITIES FAVORS KNOT .....................................10

VI. CONCLUSION.............................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*,
  663 F.3d 966 (8th Cir. 2011) ....................................................................4

*Compulife Software Inc. v. Newman*,
  959 F.3d 1288 (11th Cir. 2020) ...............................................................3

*Deloitte Consulting LLP v. Sagitec Sols. LLC*,
  2023 WL 6039069 (D. Del. Sept. 15, 2023)...........................................5

*E.I. duPont deNemours & Co. v. Christopher*,
  431 F.2d 1012 (5th Cir. 1970) ..................................................................4

*Harbor Bus. Compl. Corp. v. Firstbase.io, Inc.*,
  152 F.4th 516 (3d Cir. 2025) ....................................................................6

*Houser v. Feldman*,
  569 F. Supp. 3d 216 (E.D. Pa. 2021)........................................................4

*Langley v. Merck & Co. Inc.*,
  186 F. App'x 258 (3d Cir. 2006) ..............................................................4

*Mallet & Co. Inc. v. Lacayo*,
  16 F.4th 364 (3d Cir. 2021) ......................................................................5

*Montway LLC v. Navi Transp. Services LLC*
  809 F. Supp. 3d 200 (D. Del. 2025) .........................................................8

*Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*
  2024 WL 4344742 (D. Del. Sept. 30, 2024)............................................8

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017), *as amended* (June 26, 2017). No ...........4

**Statutes**

18 U.S.C. § 1839(5)(B)....................................................................................8

18 U.S.C. §§ 1839(5)(B)(i), (6)(A)..................................................................7

Atomic's response includes a damning admission and glaring omission reinforcing why the Court should grant Knot's Motion for Temporary Restraining Order. **Atomic admits it stole and is using Knot's trade secret and copyright protected Authentication Integrations Source Code.** Atomic also concedes portions of Knot's source code qualify for trade secret protection. It excuses its misconduct by claiming an unidentified Atomic engineer "observed" the AISC from a public source. But **Atomic submits no evidence that the AISC was public.** The screengrab it includes *lacks the honeypot* and is not the AISC Atomic copied. Neither declarant explains with personal knowledge how Atomic obtained the AISC. Worst of all, Atomic represents that *none* of its engineers use Knot or agreed to Knot's Terms and Conditions. That is false: At least two Atomic employees *currently* use Knot with numerous accounts and have spent hours interfacing with Knot's products—atypical behavior compared to most users.

Following these concessions, Atomic attempts to argue that Knot insufficiently protected the AISC. This is also wrong. The Court should grant the limited relief Knot seeks and maintain the status quo given that Atomic's Face ID authentication feature does not function.

## I. ATOMIC ADMITS IT COPIED AND USED KNOT'S CODE

Atomic admits it copied Knot's AISC, which accelerated development of its competing software. (Anderson Decl. ¶¶ 30–31.). The Complaint demonstrates the

copying: Atomic's code base shows the same structure and variable names as Knot's. Atomic's copying was so extensive, in fact, that Atomic just slavishly copied the honeypot into its own code without bothering to change it. Atomic's declarations show the AISC's value to Atomic: Atomic launched its Face ID authentication only after Atomic copied Knot's code. (*See id.* ¶ 21.)

## II. ATOMIC'S DEFLECTIONS ABOUT SUPPOSED PUBLIC AVAILABILITY ARE FACTUALLY WRONG AND TELLING

Caught with its hands in the honeypot, Atomic stakes its defense on a false premise. It repeatedly calls Knot's code "publicly available" and claims Knot failed to adequately protect its code. This defense fails on the facts and the law.

### A. The AISC Is Not Publicly Available

Knot's AISC is not "publicly available" as Atomic claims. The AISC is maintained in a private repository with access limited to authorized personnel. (Compl. ¶ 51.) It is protected by Transport Layer Security encryption, Static Application Security Testing, web application firewalls, and weekly vulnerability scans. (*Id.*) Atomic identifies no specific location—no archived webpage, no SDK documentation, no developer portal—where the 37-character honeypot string "auth-bpbsofh5-zlxp-qce3-6ney-4jfahfxa" or the AISC was publicly available. Mr. Anderson acknowledges that, after being sued, Atomic attempted to return to the portion of Knot's SDK containing the honeypot code but **could not**. (*See* Anderson Decl. ¶ 27.) Atomic argues the code was "publicly accessible to any application that

integrates with Knot's services." Opp'n at 7. But that's the point: Atomic is not an "application that integrates with Knot's services." It is a competitor who should have no access to Knot's software code.

The evidence on which Atomic attempts to rely for this argument is not compelling. Atomic does not submit its own record of what was supposedly available at that URL when it copied the source code. Indeed, Atomic conspicuously refuses to explain who copied Knot's code, when the copying was done, and how. So Atomic tries to show the code was available in the past by submitting a screenshot from a third party, the "Wayback Machine" website, depicting a website dated February 24, 2026. But that screenshot is meaningless because it does not include the code Knot alleges Atomic copied. Most critically, it does not include the honeypot string that Atomic copied verbatim into its own code. Declaration of Kieran O'Reilly ("K. O'Reilly Decl.") ¶ 47.) The URL in the Wayback Machine screengrab is also not "publicly available." That URL is not indexed by search engines, and there is no way to know the URL without using improper means. (*Id.*) The only way to access the source code depicted in the Wayback Machine screengrab is to extract a URL buried within Knot's SDK. (*Id.*) That is not a "publicly available" source. That is access obtained by improper means. *See Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1314 (11th Cir. 2020) (scraping data accessible only through technical circumvention constitutes improper means);

*E.I. duPont deNemours & Co. v. Christopher*, 431 F.2d 1012, 1016 (5th Cir. 1970)

(obtaining knowledge through means that circumvent reasonable security measures

constitutes improper acquisition).

The AISC is not transmitted in a manner accessible to ordinary developers.

(K. O'Reilly Decl. ¶ 42.)[1] Instead, a malicious actor would have likely had to

undertake a coordinated effort employing multiple tools associated with hackers—

such as man-in-the-middle attacks or scraping to access the underlying code. (*Id.* ¶¶

42–43.) The DTSA does not absolve Atomic from liability because it successfully

misappropriated a trade secret. That Atomic misappropriated Knot's AISC does not

extinguish its trade secret status. *Houser v. Feldman*, 569 F. Supp. 3d 216, 228 (E.D.

Pa. 2021) ("where a disclosure is not by the trade secrets owner's own actions and

would in and of itself constitute an actionable misappropriation" information retains

its trade secret status); *see AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663

F.3d 966, 974 (8th Cir. 2011) ("The fact that a trade secret was successfully

---

[1] Demonstrating a likelihood of success on the merits requires Knot to show "that it can win," not the complete absence of factual disputes. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). No dispute of fact exists regarding the availability of Knot's AISC. Paragraphs 40 and 41 of Mr. Anderson's declaration—that Atomic relies on for its public-availability argument—do not derive from his personal observation but are based explicitly on his mere *belief*. Anderson Decl. ¶ 40 (Mr. Anderson "believe[s] the information Knot transmitted publicly through its SDK could be observed"); ¶ 41 (basing allegation on "belief"). Litigants "cannot create a genuine issue of material fact by simply testifying as to [his] beliefs. . . ." *Langley v. Merck & Co. Inc.*, 186 F. App'x 258, 260 n.1 (3d Cir. 2006).

misappropriated does not defeat the fact that there were reasonable efforts to maintain its secrecy.").

Even if portions of Knot's SDK were accessible through scraping or man-in-the-middle attacks that violate Knot's T&Cs, that would not render the entire AISC public. "[I]nformation will not necessarily be deprived of protection as a trade secret because parts of it are publicly available." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 386 (3d Cir. 2021).

The AISC is neither public nor readily ascertainable. Atomic fails to show otherwise. The AISC qualifies for trade secret protection.

## B. Knot's Description Of The AISC Provides Ample Notice

Knot identifies with sufficient particularity the trade secret Knot contends Atomic misappropriated. (Compl. ¶¶ 37(a)(i), 63, 107.) The case Atomic cites actually supports Knot. *See Deloitte Consulting LLP v. Sagitec Sols. LLC*, 2023 WL 6039069, at *3 (D. Del. Sept. 15, 2023). In *Deloitte*, the court found that the trade secret was adequately described because it "set forth reasonably finite categories of information that put [the defendant] on notice of the claims against it." *Id*. Knot has, too: AISC is "source code that enables software specific to Apple devices to function successfully. This particular source code involves a series of elements and workflow-enabling biometric authentication systems." (Compl. ¶ 37(a)(i).) It "is written instructions that define how Knot's Face ID function software works." (*Id.* ¶

5

61.) Atomic understands the trade secret's contours well enough to describe how it used the AISC, to admit its code included it, and to acknowledge its engineers analyzed it to develop Face ID. (Anderson Decl. ¶ 30.) Feigned ignorance of the asserted trade secret will not work.

**C. Knot Deploys Extraordinary Measures To Keep The AISC Confidential**

The Court should reject Atomic's reasonable measures argument because it ignores the detailed and specific measures Knot implemented with respect to its AISC, as set forth in paragraph 51 of the Verified Complaint. Knot describes the specific, heightened measures it implemented to prevent the improper acquisition of its AISC. (Compl. ¶¶ 38–51.) These are not generalized corporate security policies but targeted measures for AISC.

**III.      ATOMIC MISAPPROPRIATED KNOT'S AISC**

Although Knot "may rely on circumstantial evidence showing access to the trade secrets and similarities between those secrets and the accused product,"[2] its evidence is much stronger than circumstantial: Atomic admits it possesses the AISC. (Anderson Decl. ¶ 30). The lynchpin of Atomic's response is that it never agreed to Knot's T&Cs. Mr. Anderson's declaration states Atomic engineers never "created accounts with Knot, signed into any Knot systems, or otherwise accessed any non-public Knot resources." (*Id.* ¶ 37.) This is false. **At least two of Atomic's employees**

---

[2] *Harbor Bus. Compl. Corp. v. Firstbase.io, Inc.*, 152 F.4th 516, 530 (3d Cir. 2025).

**created multiple Knot user accounts, spent hours interfacing with Knot's product, and repeatedly agreed to Knot's T&Cs.** K. O'Reilly Decl. ¶ 10–28.) JJ Berrett and Mike Grice use Knot and have interfaced with Knot's products in highly unusual ways for unusually long periods. (*Id.* ¶ 17–19; 26–28.) Each agreed to Knot's T&Cs, which prohibit copying Knot's code and disassembling, decompiling, or deciphering Knot's products. (*Id.* ¶¶ 14, 16, 23, 25.) The lengthy time both individuals spent interfacing with Knot's product suggests they accessed Knot's products to steal or copy Knot's authentication flows, behavior, and new features.[3] (*Id.* ¶¶ 19, 28–29.) Acquiring another's trade secret through "inducement of a breach of a duty to maintain secrecy" or "espionage through electronic or other means" constitutes misappropriation. 18 U.S.C. §§ 1839(5)(B)(i), (6)(A).

And Atomic misappropriated Knot's trade secret regardless of whether Messrs. Berrett and Grice agreed to Knot's T&Cs. Atomic (1) concedes it used Knot's AISC without Knot's consent and contrary to its T&Cs (Anderson Decl. ¶¶ 30, 38), and (2) did so while it knew or should have known AISC was obtained improperly or acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the AISC. *See* 18 U.S.C. § 1839(5)(B). Here, Atomic

---

[3] Mr. Anderson's assertion that "Atomic engineers [have not] created accounts with Knot" is based on information and belief that the Court can ignore, (Anderson Decl. ¶ 37), particularity considering the contradictory and competent evidence Knot submits. (K. O'Reilly Decl. ¶¶ 10–34.)

knew or should have known the AISC was obtained by employees who agreed to Knot's T&Cs (or otherwise under circumstances imposing a duty of confidentiality/limits on use). It admits using it—and continuing to use it—regardless. That misconduct meets the DTSA's definition of misappropriation. As Judge Bibas explained in *Montway LLC v. Navi Transp. Services LLC*, a plaintiff can state a trade secret claim by alleging that the defendant "exploited" trade secrets received from another with access. 809 F. Supp. 3d 200, 218–19 (D. Del. 2025). The defendants were aware of the confidentiality policies that prohibited sharing information. *Id.* at 219. These circumstances resemble the allegations in *Montway*: Atomic exploited its employees' user accounts knowing Knot's T&Cs prohibited the very thing Atomic acknowledges doing. (*See* Compl. ¶ 49.)

The cases Atomic cites support Knot. Opp'n at 14. In *Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*, the court found sufficient allegations of misappropriation. 2024 WL 4344742, at *8 (D. Del. Sept. 30, 2024). It emphasized that the Third Circuit "defined 'use' of a trade secret **broadly**, encompassing 'all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as assisting or accelerating research or development.'" *Id.* (emphasis added) (quoting *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021)). Atomic also cites *Truinject Corp v. Galderma S.A.*,

to argue that "speculation, without more, is insufficient to show misappropriation." 694 F. Supp. 3d 491, 502 (D. Del. 2023), *appeal docketed*, No. 25-1268 (Fed. Cir. December 5, 2024). But *Truinject* was a summary judgment decision after full discovery that did not involve similarities between a program's underlying source code. Atomic's self-serving speculation and convenient plausible deniability for how it obtained the AISC favors Knot. Knot will likely succeed on its trade secret misappropriation claim.

## IV. KNOT WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

Atomic's irreparable harm argument relies on an inaccurate statement that Knot's Face ID feature does not work. Knot's Face ID authentication works; Knot users utilize it thousands of times daily. (K. O'Reilly Decl. ¶¶ 36–37.) Atomic's argument that *its* Face ID code does not function does not eliminate the irreparable harm Knot faces. (Anderson Decl. ¶ 43.) The harm includes the ongoing risk of further disclosure, the market distortion caused by Atomic's pricing strategy, the threat to Knot's enterprise negotiations, and the damage to Knot's capital-raising prospects—none of which are affected by whether Atomic's or Knot's Face ID implementation currently functions.

Atomic ignores most of the concrete harms Knot identified in its opening brief and in Rory O'Reilly's declaration. Atomic's possession and continued use of Knot's AISC creates an *ongoing* risk of further disclosure to additional Atomic

personnel, business partners, vendors, and customers. (R. O'Reilly Decl. ¶ 29.) The third basis for finding irreparable harm—Atomic's continued and evolving use of the AISC—justifies an irreparable harm finding. And the harm Atomic's misappropriation poses is compounded by its willingness to continue to use the AISC even after getting sued for trade secret misappropriation. Knot, based on its legitimate fear that Atomic will further misappropriate Knot's source code, is delaying the updated source code's rollout. (*Id*. ¶ 40.)

## V. THE BALANCE OF EQUITIES FAVORS KNOT

This TRO presents a straightforward circumstance in which granting the injunction poses no harm to the defendant and simply maintains status quo. Atomic's Face ID feature does not function. And Atomic used Knot's AISC for backup purposes only. (Anderson Decl. ¶ 42.) The facts, taken together, tip the balance in Knot's favor because Atomic cannot legitimately claim harm based on a currently inoperable feature.

Knot seeks extremely narrow injunctive relief: enjoining Atomic from using software that was copied or derived from Knot's AISC. Even if Atomic's Face ID functioned, Knot estimates this would affect at most two Atomic customers. (R. O'Reilly Decl. ¶ 10; K. O'Reilly Decl. ¶ 58.). The TRO would not touch any of Atomic's products unrelated to merchant connectivity or Face ID. On the other hand,

Knot's Face ID authentication feature constitutes its primary source of revenue that Knot expects will only continue to grow. (Compl. ¶¶ 59–60.)

Atomic's argument that the TRO would be overbroad because it could sweep in code that "derives from" the honeypot is speculative. (Wright Decl. ¶ 31.) The appropriate response would be to propose narrowing language, not to oppose all relief.

## VI.     CONCLUSION

For the foregoing reasons, the Court should grant Knot's Motion and enter a Temporary Restraining Order. D.I. 1-1. Knot also requests that the Court schedule a hearing on its pending Motion for Preliminary Injunction.

Dated: March 31, 2026

OF COUNSEL:

Justin K. Victor
Jacob R. Dean
Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road NE
Suite 2500
Atlanta, GA  30305
678.553.2100
victorj@gtlaw.com
deanj@gtlaw.com

Gregory S. Bombard
Greenberg Traurig, LLP
One International Place
Suite 2000
Boston, MA  02110
617.310.6000
Gregory.Bombard@gtlaw.com

Justin A. MacLean
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY  10017
212.801.9200
Justin.MacLean@gtlaw.com

Greenberg Traurig, LLP

/s/ Benjamin J. Schladweiler
Benjamin J. Schladweiler (#4601)
Greenberg Traurig, LLP
222 Delaware Avenue, Ste. 1600
Wilmington, DE 19801
302.661.7000
schladweilerb@gtlaw.com

*Attorneys for Plaintiff MyCard, Inc. d/b/a/ Knot*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MYCARD, INC. d/b/a/ KNOT, | |
| Plaintiff, | Civil Action No. 26-290-CFC |
| v. | Jury Trial Demanded |
| ATOMIC FI, INC., | |
| Defendant. | |

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

The undersigned counsel certifies that this filing complies with the type, font, and word limitations set forth in Judge Connolly's November 10, 2022 Standing Order. According to the word processing system used to prepare it, the foregoing document contains 2,499 words, excluding the case caption, address block and signature block. The text of this document, including footnotes, was prepared in Times New Roman, 14-point font.

Dated: March 31, 2026

GREENBERG TRAURIG, LLP

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (# 4601)
Greenberg Traurig, LLP
222 Delaware Avenue, Ste. 1600
Wilmington, DE 19801
302.661.7000
schladweilerb@gtlaw.com

*Attorneys for Plaintiff MyCard, Inc.*
*d/b/a/ Knot*